# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

HERSCHEL KINCAID, )
)
           **Plaintiff,** )
  **v.** )      **Case No. CIV-14-552-FHS-SPS**
)
CAROLYN W. COLVIN, )
**Acting Commissioner of the Social** )
**Security Administration,** )
)
         **Defendant.** )

## REPORT AND RECOMMENDATION

The claimant Herschel Kincaid requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on August 10, 1972, and was forty-one years old at the time of the administrative hearing (Tr. 67, 180). He completed the twelfth grade, and has worked as a furniture assembler and inspector packager (Tr. 60, 207). The claimant alleges he has been unable to work since April 16, 2012, due to problems with his back and knees (Tr. 206).

### Procedural History

On October 13, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written decision dated May 23, 2014 (Tr. 52-62). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he required a sit/stand option allowing him a temporary change in position from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the work space so as not to diminish pace or production. Additionally, he found the claimant could only

occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs; never climb ropes, ladders, or scaffolds; and must avoid moving machinery and unprotected heights. Finally, the ALJ limited the claimant to simple tasks with routine supervision (Tr. 55). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, touch up screener and document preparer (Tr. 61).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess his credibility, (ii) by failing to properly include limitations in his RFC, and (iii) by failing to fully develop the record.[2] The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, hypertension, obesity, knee pain, and gout (Tr. 54). The relevant medical evidence reveals that the claimant was mostly treated at Spiro Family Medical by Judy H. Trent, DO, and that she had been treating him since 1999 (Tr. 276-305, 335-344, 353-375, 394, 415-420). Back in March 17, 2000, a lumbar spine x-ray revealed small Schmorl's node defect along the superior end plate of L3, mild L5-S1 disc space narrowing that was probably a normal transitional level with no spondylolisthesis identified (Tr. 354). A January 2, 2009 lumbar spine x-ray again revealed mild degenerative changes involving the lumbar spine without compression fractures (Tr.

---

[2] The undersigned Magistrate Judge notes that Plaintiff's Counsel has failed to comply with Local Civ. R. 7.1(d) in submitting her Opening Brief but nevertheless proceeds on the merits of the arguments raised.

359).  Dr. Trent's treatment notes from May 2011 through July 2012 indicate diagnoses of musculoskeletal pain, hyperlipidemia, hypertension, gout, abnormal liver and kidney tests, and elevated blood sugar (Tr., *e. g.*, 274).  His pain ranged from zero to five, on a scale of ten, and musculoskeletal exams revealed joint pain and bilateral knee tenderness (Tr. 276-305).  A May 24, 2012 x-ray in response to the claimant's reports that his knees were getting worse revealed mild degenerative changes of the knee, with an impression of "minimal early degenerative changes with minimal tricompartmental osteophyte formation," and Dr. Trent recommended vocational rehab for job training in response (Tr. 279, 282, 284, 298).  In November 2012, the claimant again reported worsening knee pain and persistent back pain associated with left side sciatica, with a pain level of ten out of ten (Tr. 336-338).

On November 6, 2012, Dr. Luther Woodcock reviewed the medical evidence and completed an RFC assessment in which he stated that the claimant could perform sedentary work with postural limitations including occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders/ropes/scaffolds (Tr. 100-101).  On reconsideration, Dr. Yondell Moore reviewed additional evidence and again concluded that the claimant could perform sedentary work with the same postural limitations, with the addition that the claimant needed to avoid even moderate exposure to hazards (Tr. 109-111).

On July 22, 2014, Dr. Tracy Baker saw the claimant as a new patient, with reports of arthritis and chronic lower back pain (Tr. 377).  Upon a musculoskeletal examination, the claimant's overall findings were normal, although he walked with a quad cane, his

lumbosacral spine exhibited tenderness on palpation, and straight leg raising tests were negative (Tr. 379). Dr. Baker assessed the claimant with arthritis and lumbago (Tr. 379). Dr. Baker ordered lumbar spine and bilateral knee x-rays as well. The lumbar spine x-ray revealed paralumbar mild degenerative disc disease, multilevel mild facet arthrosis, and no acute disease (Tr. 381). The knees were unremarkable bilaterally (Tr. 382).

On January 15, 2014, Dr. Trent completed a "Treating Physician Opinion of Patient Limitations," in which she indicated that the claimant had a severe degree of pain that was increased by physical activity, and that he could not sustain attention and concentration for two hours at a time due to physical limitations (Tr. 394). She further indicated that the claimant could not do so consistently for a typical work week, and that his ability to function independently, appropriately, and effectively on a sustained basis would be seriously impaired on occasion. In support, she stated that the claimant was "having severe pain in his mid and lower back as well as his legs and feet" (Tr. 394). That same day, her treatment notes indicate that the claimant had moderate bone joint tenderness in the lumbar, midline, thorax, and feet bilaterally with moderate swelling (Tr. 418-419). Her assessment/plan indicated that the claimant was to use cane as needed for ambulation

At the administrative hearing, the claimant testified that he believed he could not work due to the combination of his back pain and knees progressively worsening, and that he has balance problems if he stands or sits to long (Tr. 72). He stated that Dr. Trent had prescribed his cane (Tr. 83). He further testified that he drives two to three times week, that he takes care of his house and mows the lawn although not as effectively as in

the past (Tr. 73, 77).  As to his medications, he testified that the first two blood pressure medications caused him problems, but that he was on a third that had not caused negative side effects (Tr. 76-77).

In his written opinion, the ALJ summarized the claimant's testimony as well as most of the medical evidence in the record.   At step four, the ALJ found that the claimant's allegations were not supported to the extent alleged, noting that the x-rays and examinations revealed mild restrictions and limitations (Tr. 56-58).  He noted that the claimant's daily activities included mowing the lawn with breaks, living alone, driving, not needing help with personal care, cooking meals daily, doing his own laundry, and shopping, and that the claimant reported that he lost his job as the result of a layoff rather than his impairments (Tr. 58-59).  The ALJ gave little weight to Dr. Trent's opinion, finding that her opinion was conclusory and provided little explanation for evidence relied upon, and that it was inconsistent with the course of her treatment, which did not include injections, surgery, or physical therapy for pain (Tr. 60).

The claimant first contends that the ALJ erred in analyzing his credibility.  A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted].  An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v.*

*Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) the history of physical examinations and x-rays with mild results, (ii) his daily activities, and (iii) that there had been no significant objective deterioration in the claimant's condition since he lost his job (Tr. 56-59). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.

The claimant nevertheless argues that the ALJ improperly discounted the claimant's complaints of pain because the claimant testified to recent swelling in his legs

and balance problems, and further discounted the side effects of his medication where he testified that previous (but not current medications) had resulted in serious side effects (Tr. 76-77). "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). But here there is no indication that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, specifically in evaluating Dr. Trent's opinion as a treating physician. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec.

Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

The ALJ's treatment of Dr. Trent's opinion, summarized above, meets these standards. Although his boilerplate speculation regarding the possibility that Dr. Trent sympathized with the claimant or that she provided her opinion to avoid tension with the claimant is questionable, the ALJ nevertheless made clear that he did not base his ultimate conclusion on this. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Trent's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2). The claimant nevertheless argues that the ALJ failed to explicitly consider the length of

Dr. Trent's treating relationship with the claimant. However, the ALJ noted the evidence dating back to 2000 and further indicated the factors he was required to considered and stated that he had considered them. The ALJ is not required to discuss each factor and the claimant has failed to explain how the length of the treating relationship, standing alone, should affect this analysis. *See Oldham*, 509 F.3d at 1258 (2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required[.]") [internal citations omitted]. *See also Andersen v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citation omitted].

Finally, the claimant contends that the ALJ failed to develop the record because he "clearly had physical impairments that were not treated or sufficiently addressed." *See* Docket No. 18, p. 19. He nevertheless fails to point the Court to what these impairments were or how they affected the claimant so as to result in "severely limiting exertional and non-exertional impairments." It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it

is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that []he is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. Here, the claimant has not met this burden.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**